THE EUREKA CONSOLIDATED MINING COMPANY *v.* THE RICH-
MOND CONSOLIDATED MINING COMPANY, (limited.)

*(Circuit Court, D. Nevada.   June 14, 1880.)*

REMOVAL.—A suit brought in a court of the state of Nevada, by a citizen
of California against a citizen of England, may be removed into the cir-
cuit court under act of March 3, 1875.

Motion to Remand.

*Crittenden Thornton*, for the motion.

*John Garber*, opposed.

HILLYER, D. J.    This is a motion to remand the cause to the
state court from which it was removed.   The plaintiff is a
corporation of California, and the defendant an English cor-
poration, doing business in Nevada.   The sole question is
whether the character of the parties is such as gives this court
jurisdiction.   On both sides it has been assumed, and cor-
rectly, no doubt, that the case stands precisely as if the
plaintiff and defendant were natural instead of artificial
persons.   The defendant makes this motion upon the ground
that neither party is a citizen of the state in which the suit
is brought, and it is argued that, notwithstanding the omis-
sion from the act of 1875 of the words in the act of 1789,
confining the jurisdictiom to suits "brought by a citizen of
the state in which the suit is brought," (1 St. 79,) the
meaning of the act of 1875 is, in this respect, identical with
that of 1789, and subsequent statutes prior to that of 1875,
prescribing the same restriction, that the word "foreign" must
relate to the residence of the party suing, and not to the forum
in which suit is brought; that is to say, in order that there
may be a right of removal in a case like this the suit must
now, as before the act of 1875, be brought in the state in
which the plaintiff resides.

The question, upon examination, appears to me to be en-
tirely free from difficulty.   Under the constitution the judicial
power extends to controversies "between a state or citizens
thereof and foreign states, citizens and subjects."   There is
nothing here limiting or qualifying the power in the enumer-
15*

ated cases. It is only in the acts of congress passed subsequently that the restrictions are found. So long as it kept within constitutional bounds congress might place limitations on the jurisdiction of the circuit courts, and in like manner it had power to take them away. This it has done in the act of 1875, § 2, which, so far as it bears on the present case, is in the language of the constitution, and gives the circuit courts jurisdiction, and the right of removal thereto, in suits wherein there is "a controversy between citizens of a state and foreign states, citizens or subjects."

There is nothing said about the suit being brought in the state where the "citizens of a state" in a given case reside. Nor is there any warrant for any qualification of that sort. All that is necessary under this clause is that one party shall be a citizen or a subject of a foreign state and the other a citizen of "a state."

The distinction here taken between a "foreign state" and "a state" is, it seems to me, an answer to the position of defendant stated above, viz.: That the word "foreign" must be referred to the residence of the citizen of the United States, and not to the district in which the suit may be brought. In order to maintain his position the defendant is obliged to bring into this statute a provision not put there by congress, but studiously left out.

The plaintiff properly sued the defendant in a court of this state, and afterwards it, being a citizen of "a state," (California,) and the defendant being a foreign citizen or subject, (of Great Britain,) transferred the suit to this court, that being the very case made by the statute in which a removal is authorized. It is said no case in point can be found—that is, a case between a citizen of a state, a member of the Union, and a citizen of a foreign state. But there is a universal concurrence of opinion that since the act of 1875 it is no longer necessary, in suits between citizens of different states, that either shall be a resident of the state in which the suit is brought. Dillon on Removals, 26; *Cooke* v. *Ford*, 16 Am. Law Reg. 417; *Peterson* v. *Chapman*, 13 Bl. 395.

But it is impossible to distinguish the present case from

these in principle. In both instances the language conferring the jurisdiction is general—in one case extending the judicial power to controversies between citizens of states, and in the other to those between a citizen of a state and a citizen of a foreign state. But it is said that the fundamental ground upon which jurisdiction, by reason of citizenship of parties, rests, is the fear of local prejudice, and that this cannot possibly exist in a case like the present. A sufficient answer to this, it seems to me, is that when the constitution and the law give the jurisdiction in plain language, it is unprofitable to look further for the legislators' motive.

But counsel is in error when he assumes that the fear of local prejudice was the only ground for the grant of jurisdiction. The case of aliens stands among another class, namely, those involving the peace of the Union. Mr. Hamilton shows in the *Federalist* (No. 80) why the judicial power was extended over cases in which aliens were parties, even when the case depended wholly upon the *lex loci*, and it was undoubtedly the intention to refer all such cases to the national tribunals. Page 554.

The motion is denied.